## No. 8753.

### SUCCESSIONS OF JEAN WEBRE AND OF HIS WIFE, DOROTHÉE DESLATTES.

A husband may convey to his wife his interest as beneficiary heir in a succession. Such interest is susceptible of delivery, though the succession, at the time, is under administration. Nor does the wife, by a purchase of such interest, bind herself for her husband's debts. A recognition of such transfer by the administrator in his account, and his proposal to pay the fund representing such interest to the wife, is evidence sufficient of his receiving notice of such *dation*. No notice to the co-heirs is requisite.

APPEAL from the Twentieth District Court, Parish of Lafourche. *Knoblock, J.*

*Moore & Badeaux* for Opponent and Appellee :

I.

*First.* Delivery is not the mere consequence, but is the essence of a *dation en paiement.* C. C. 2656; Pothier, Contract of Sale, par. 602 ; 3 M. 226, 269 ; 12 La. 375 ; 20 An. 282 ; 21 An. 322 ; 27 An. 616 ; 28 An. 308 ; 30 An. 1114.

*Second*—(a) A thing not susceptible of delivery cannot be the subject of a *dation en paiement.*

(b) An heir's undetermined and residuary interest in a succession under administration cannot be the subject of a *dation*, because there can be no delivery until that interest is fixed and determined. 24 An. 85.

(c) Property in expectancy may be the object of a contract of sale, but not of a *dation en paiement*, as the latter requires delivery. 3 La. 154 ; 15 An. 165 ; 19 An 17.

*Third.* The residuary and undetermined interest of an heir in a succession is a movable. 31 An. 748 ; 12 An. 864.

*Fourth.* There is no synonymy between "residuum" and "entire," hence, when an heir's rights are limited to his claiming the residuum of a succession (if any residuum exists) after the payment of debts and charges, that right can never be considered "an action to recover an entire succession:" 2 R. 1.

*Fifth*—(a) As a general rule the tradition of immovables is considered as always accompanying the public act of transfer, "but from this general provision those cases must be excepted in which there is an evident legal obstacle to the delivery. The law cannot consider that as done which cannot be legally done." Emerson et al. vs. Fox et als., 3 La. 181.

(b) "The tradition or delivery is the transferring of the thing sold into the power and possession of the buyer." C. C. 2477.

(c) As long as the succession of the ancestor is under administration for the purpose of paying debts, as this succession is, the heir cannot dispossess the succession representative

without first tendering the amount necessary to pay the debts and charges of the succession. It is optional with them to do so, but they cannot take away the seizin without complying with this essential prerequisite. 33 An. 605, and cases there cited.

(d) In the instant case, the heir, the transferrer, had not complied with this "essential" prerequisite. He had, therefore, no "power" over and "possession" of the thing given in payment, and, therefore, could not transfer any "power and possession" unless it be said that the transferree acquires greater rights than the transferrer had.

(e) Hence, though the thing given in payment be an immovable, there "existed a legal obstacle to the delivery," and the case is "excepted from the general rule that delivery accompanies the public act of transfer. The law cannot consider that as done which cannot be legally done." 3 La. 181; see Pothier, Contrat de Vente, No. 318; 31 An. 747.

*Sixth.* If it be said that the transferree was given the "power" to go into "possession" by complying with the "essential prerequisite," the answer is that she did not avail herself of that "power;" and if she did, by either paying or offering security for the debts due by the heir, (her husband and transferrer) she would simply have been contracting and binding herself for her husband's debts, which she is prohibited by law from doing. [See *infra.*]

*Seventh—(a)* The tradition of incorporeal rights is to be made either by the delivery of the titles and of the act of transfer, or by the use made by the purchaser with the consent of the seller. C. C. 2481.

(b) No titles were delivered and no "use" whatsoever was made by the purchaser, with or without the consent of the seller, of the thing given in payment.

(c) To constitute a delivery under this Article there must be both the transfer of the "titles and the "use." See Boileux, Vol. 5, p. 645.

II.

*First.* A sale by an heir of his interest in a succession is an acceptance pure and simple. C. C. 1002, 988, 1013; 29 An. 348.

*Second.* A succession consists of rights and obligations, (C. C. 871 *et seq.*) hence, a purchaser of a succession interest buys the rights and binds himself for the obligations of the heir whose interest he has purchased. 6 R. 488; 31 An. 747; 34 An. 952; Dalloz et Vergé Code Civil Annoté, Art. 1696, Nos. 51, 55; Pothier, Vente, Nos. 541, 546, 530.

III.

*First—(a)* The transferree is only possessed against third persons after notice has been given to the debtor. C. C. 2643.

(b) The co-heirs are the debtors. Gilbert & Sirey, Codes Annotés, Art. 1690, No. 2.

*Second.* Registry is not notice sufficient to bind third persons. 5 N. S. 181.

IV.

*First.* The interest of the vendor is shown to be worth triple the amount for which he assumed to sell.

V.

*First.* Where there has been no delivery, the judgment creditor may seize the property of his debtor without resorting to the revocatory action. C. C. 1923; 1 An. 59; 12 M. 250; 18 An. 606; 16 An. 286; 26 An. 383; 21 An. 194, 414; 6 An. 753.

*Second.* Publication of the filing of an account and tableau is citation to heirs and creditors. 10 R. 118; 18 An. 263; 29 An. 378.

*Third.* An opposition to a tableau of distribution is an answer. 28 An. 607.

*Fourth.* Our seizure properly made. 31 An. 741; 32 An. 594.

---

## J. S. Goode for Mrs. L. Webre:

The rights of Mrs. Leonard Webre, the assignee, accrued prior to the claims of the opponent, Herwig; and the latter's judgment against the husband was of date subsequent to that of the transfer which it is sought to annul. A creditor is absolutely without legal right to contest the rights of parties under a contract antedating his own claim. 32 An. 1150.

Successions of Webre and Wife.

The present is virtually an incidental and collateral attack upon a contract, as to which not only is fraud or simulation not alleged, but which it is admitted is perfect in form, and based upon a *bona fide* and sufficient consideration. Without pleading fraud or simulation to annul a contract, not absolutely void upon its face, a direct action is always indispensable. 15 An. 177, 221, 302, 553; 19 An. 53; 18 An. 166; 6 An. 688; 21 An. 271; 20 An. 41; 30 An 374; 23 An. 46; 23 An. 260; 23 An. 175, 772; 24 An. 224; 25 An. 35; 29 An. 12; 30 An. 511; 32 An. 506; Louque's Digest, p. 483, Sec. 21.

A contract will not be annulled in the absence of one of the principal parties to it. Leonard Webre, the vendor, has never been cited, and is not before the court.

There has been no legal seizure made by the sheriff under the judgment of the opponent. At the date of that pretended seizure of the property in question it was no longer in a state of indivision, but consisted of specific articles—money and notes. The former could only be reached under garnishment process, and the notes themselves should have been seized. 18 An. 57; 6 R. 345; 16 An. 105; 7 R. 500; 2 An. 338, 785, 910; 28 An. 124; 3 An. 390; 4 An. 369; 6 An. 531, 581.

Opponent cannot consistently claim a privilege by virtue of his seizure when the possession of the sheriff has been identical with that derived by Mrs. Leonard Webre, under the transfer, the nullity of which is sought for the want of possession. In both instances the possession was constructive, and followed the act by operation of the law itself.

It is the policy of the law to guard with jealous care the rights and interests of minors and married women. All doubts are construed in their favor, and as to them the doctrine of estoppel has no application. 8 An. 484; 27 An. 341.

The law favors *dations en paiement* when honestly made. 22 An. 328.

"Two essentials are requisite to the validity of a *dation en paiement* by the husband to the wife: 1st, that the husband should be really indebted to her; 2d, that the fair value of the property should not exceed the amount actually due to her." (Lehman, Abraham & Co. vs. Levi, 30 An. 750; 23 An. 163.) Leonard Webre's interest in his mother's succession, as shown by the tableau, is $3,330.55. Her claims against her husband at the date of the *dation* is admitted to have been $3,796 27.

A sale by authentic act from the husband to the wife will erase all mortgages subsequent in rank to her's—an exception in legal practice. 26 An. 593; C. C. 2399, 2402, 2421; 8 An. 484; 27 An. 341; 22 An. 321; 33 An. 532.

All persons have the capacity to contract, except those whose incapacity is especially declared by law. C. C. 1782.

A contract of sale from the husband to the wife may legally be made to replace her dotal or other effects alienated. The word sale is not found in the Article, which provides for a transfer of property. C. C. 2446.

Incorporeal objects may be sold—"such as a debt, an inheritance, a servitude, or any other rights." C. C 2449; 24 An. 85; 26 An. 292, 669; 31 An. 741.

Four essential ingredients constitute a valid sale: 1st, capacity to contract; 2d, consent; 3d, a certain object; 4th, a lawful purpose. It is admitted that all these essentials exist as to the contract now in question. C. C. 1779.

The registry of authentic act constitutes within itself delivery of possession. 30 An. 968; 32 An. 1152.

A *dation en paiement* is but a technical expression, and such a contract may be made in the form of an ordinary sale. C. C. 2446; Rabassa vs. Castein, 5 An. 493.

A judicial acknowledgment dispenses with the necessity for a previous service of notice. Prior to Herwig's seizure the administrator acknowledged that he had taken cognizance of the transfer from Leonard Webre to his wife, and refers to the book and page of the registry. Vide record, pp. 5 and 11.

A sale from a husband to his wife of his residuary interest as an heir, involves no assumpsit by her of his debts. The residuum only is conveyed, and the wife takes the property *cum onere*. It is no assumpsit even when property is transferred burdened with a superior

mortgage. Newman & Co vs Eaton and Wife, 27 An. 341; Levy, Executrix, vs. Morgan, 33 An. 532; vide 27 An. 503; 30 An. 1067; 31 An. 741; 32 An. 849.

The eventual and residuary interest of an heir in a succession may not only be an object of sale, but is susceptible of being mortgaged. It is an entirety—one and indivisible—and is really immovable in its nature. C. C. 463, 471; C. P. 45, 164, 165; Bonneau vs. Poydras 2 Rob. 1; Marcenaro vs. Mordella, 10 An. 776; David Bone vs. Sparrow, Curator, 11 An. 185; Weber vs. Ory, Administrator, 14 An. 537; Hickman vs. Freret, 30 An 1069.

" When an heir becomes the joint proprietor of mortgagable hereditary property, the mortgage resulting from the recording of a judgment against him attaches to his part or portion thereof, subject, however, to the prior debts and mortgages of the succession, and its enforcement is dependent upon the final settlement of the succession."

" The answer depends on the solution of the primary question whether or not a judicial mortgage attaches to the undivided share of an heir in the mortgagable property of a succession. Some doubt is cast upon this point, in the opinion of two of the Judges, in giving the decision of the majority of the Court in the case of Voorhies vs. DeBlanc, 12 An. 864; but an examination of that case will show that the point was not decided, nor was it directly presented." Succession of Widow Tureaud, 21 An. 253; 12 R. 450; 3 An. 34, 36; 9 An. 212; 12 An. 236; 19 An. 167; C. C. 3268, 1434; 3 An. 546; 7 An. 9, 612.

---

The opinion of the Court was delivered by

TODD, J.   The facts underlying this controversy are briefly these :

Jean Webre died in the Parish of Lafourche in 1874, leaving a surviving widow in community, Dorothée Deslattes, and twelve children, of whom Leonard Webre was one.

On the 25th of January, 1882, Dorothée Deslattes, the surviving widow, also died.   An inventory of the two successions was made on 11th February following.

On the 16th of same month Leonard Webre, one of the children and heirs of the two deceased, as stated, by an act of *dation en paiement* conveyed to his wife, Mary A. Frost, his interest in his mother's succession, as a beneficiary heir thereto, the delivery of which was acknowledged and the act duly recorded on same day.

The consideration of the transfer was a debt owing by the husband to the wife—of which there is no dispute—and the price stipulated was the estimated value of the interest sold, according to the inventoried appraisement.

On the 2d of March following, an administrator was appointed to the two successions.

After having caused a sale of the plantation—which constituted the principal property of the successions—on the 30th of December, 1882, the administrator filed a provisional account and tableau of distribution of the funds in his hands.

In the account he recites that Leonard Webre had sold his right and interest in his mother's succession to his wife, Mary A. Frost, and proposed to pay this interest, to the extent of the funds to be distributed, to her.

After the filing of this account, and on the same day, Herwig, a judgment creditor of Leonard Webre, caused to be seized under a writ of *fi. fa.* this interest of Webre purporting to have been transferred to his wife, and on the 9th of January, 1883, filed his opposition to the account, wherein he claimed· that this interest, or the fund representing it in the administrator's hands, should be paid to him by virtue of his said seizure.

There was judgment recognizing this claim of Herwig, and ordering the fund designated to be paid to him, in preference to Mrs. Webre; and from this judgment Mrs. Webre has appealed.

The grounds of opposition urged in the court of the first instance and in this Court to the claim of Mrs. Webre to the fund in question by Herwig, and of his better right thereto, under his seizure, are substantially these:

1. That the *dation* of Leonard Webre to his said wife was invalid and inoperative, because there was no delivery to her of the thing or right sold; and that the same was not susceptible of any kind of delivery.

2. Because, by the purchase of her husband's interest in his mother's succession, she, the wife, by legal implication, assumed the payment of her husband's debts therein, which rendered the act null and void.

3. That no notice of the transfer of the right in question was given to the debtor.

4. Because the price or consideration of the transfer was inadequate.

*First.* The Code in the 2d chapter, under the title of "sale," authorizes a contract of sale between husband and wife under circumstances shown to exist between the spouses in this instance. It treats of, or virtually designates, the transfer therein mentioned as a sale. C. C. 2446; 5 An. 493.

Not only corporeal objects may be sold, but incorporeal things, such as a debt, *an inheritance,* a servitude, or any other rights. C. C. 2449.

It cannot be controverted, that whatever may be the subject of a sale may also be the subject of a giving in payment, for the main difference that the law recognizes between the two contracts is, that the former is perfect by mere consent of the parties, whilst the latter "is made only by delivery." C. C. 2655; 20 An. 282.

It may also be regarded as axiomatic, that whatever the law permits or authorizes to be sold can be delivered, that is, is susceptible of some mode of delivery.

Where the thing sold is corporeal, a tangible, movable thing, there can arise no difficulty in understanding and fully appreciating the meaning of delivery with respect to it; for the Code declares "that

this tradition (delivery) is the transferring of the thing sold into the *power* and *possession* of the buyer."

Where the thing sold consists of an incorporeal right, as in this instance, a "right of inheritance," an interest in a succession, the only delivery that can be made is a constructive delivery; but such delivery when made is as effective as the actual delivery of a tangible object.

Art. 2481 declares: "The tradition of incorporeal rights is to be made either by the delivery of the titles and of the act of transfer or by the use made by the purchaser, with the consent of the seller." In this case the delivery was acknowledged in the act; the act was passed before a notary and duly recorded, which involves the delivery of the act; it sets out at length of what the succession consists, with a description of the property composing it, and of the vendor's claim thereto by inheritance, and defines his share. There was no other title, under the terms or meaning of the Code, to be delivered.

No express proof of any use made by the purchaser of the right transferred, as the Article suggests, appears in the record, but it is shown that the administrator of the succession, who might be regarded as the custodian of the right, recognized the purchaser as the owner of it, and so reported in his account, and it is to be presumed at the wife's instance; and this might be construed as a use made of the right—the procuring its recognition.

If the delivery is to be governed by C. C. Article 2643, cited by opponent's counsel, which, in referring to transfers of rights or claims, provides "that the transferree is only possessed, as regards third persons, after notice has been given to the debtor of the transfer having taken place," whilst the applicability of the Article to the instant case might be questioned, from the doubt that naturally arises as to the existence of a debtor, with reference to a right of this kind, still the administrator, rather than the heirs, might more properly be regarded as such debtor, since the fund in dispute is in his keeping and is to be paid out by him.

There is no evidence of the service of a notice of this transfer upon the administrator, but he did have notice of it, and notice before it purports to have been seized, for he makes express mention of it and fully recognizes it in his account, as before stated.

·Our conclusion on this point is, therefore, that the right sold was susceptible of being conveyed by a *dation en paiement*, and that there was a tradition or delivery of the right, within the meaning and intendment of the Code, before any seizure of the same was made by Herwig, the opponent.

*Second.* It is true that Article 1002 of the Civil Code declares that a

sale, made by one of the co-heirs of a succession of his right thereto, is considered to be, on his part, an acceptance of the succession ; and inasmuch as by Article 1013 of the Code, a simple acceptance of a succession by an heir binds him personally to pay the debts of the succession, it is argued that the purchaser of the right assumes the liability of the heir. From this it is further argued, that as the wife in the instant case was the purchaser, such purchase involved the assumption on her part of the husband's debts or liabilities, and such assumption being in contravention of a prohibitory law, is void, and renders the purchase a nullity.

This entire argument pre-supposes that this sale or conveyance by the heir in this instance, from which his acceptance of the succession pure and simple is deduced, was made when no act or proceeding had taken place that entitled him to the benefit of inventory ; but that upon the opening of the succession he had assumed the quality of an heir, unconditionally and without qualification, by going forward and selling his interest in the succession. The authorities cited by the counsel refer to the liabilities of an heir who thus unconditionally' accepts and the obligations of the purchaser who buys under these circumstances.

In the instant case we find, however, that one of the heirs had applied for an administration of the succession, and that an inventory of the same had been made before the *dation* from Leonard Webre to his wife was passed, and that a few days thereafter the administrator was appointed and qualified. In the act in question Webre declared himself a beneficiary heir and conveyed only his rights as such. The previous application for an administration and the taking of the inventory entitled him to the benefit of inventory and fixed his status or capacity as that of a beneficiary heir. As such he was not bound for the debts of the succession beyond the assets thereof, and his transferree, of course, was not bound to a greater extent.

The wife simply purchased the right or interest of her husband in the succession subject to the payment of its debts—his residuum, in other words—and bound herself for nothing. There is, therefore, no force whatever in this ground of the opposition.

*Third.* From the remarks we have made on the first point of this opposition it will appear, that if any notice of the conveyance of Webre's interests to his wife was necessary, it was to be given to the administrator, as custodian of this interest, and that the account of this administrator explicitly declared that the fact of such transfer had been made known to him, and was duly recognized by him. A notice to his co-heirs would have been without meaning or significance.

*Fourth.* The evidence does not show that the consideration of the

McConnell vs. City.

transfer was wholly inadequate and out of proportion to the value of the interest conveyed; on the contrary, the transfer appears to have been made at the valuation fixed by the sworn appraisers who made the inventory, and whose estimate is not contradicted by opposing evidence.

There has been a great deal of discussion by counsel on both sides, as to whether this interest sold was a movable or an immovable; but under the views we entertain of the matters in controversy, as already expressed, we do not think this question properly arises, or is necessary for our determination.

For these reasons our conclusion is, that the opposition of Herwig was improperly maintained.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court, in maintaining the opposition of Philip F. Herwig to the provisional account and tableau of Edmund Webre, administrator of the Successions of Jean Webre and his wife, Dorothée Deslattes, be annulled, avoided and reversed; and that the claim to the fund, proposed in said account to be paid to Mrs. Leonard Webre, preferred by the said Herwig, be rejected, and his opposition dismissed at his costs in both Courts.